1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 30, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MARY D.,

          Plaintiff,

          v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

          Defendant.

No. 1:19-CV-03083-JTR

ORDER GRANTING, IN PART,
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL
PROCEEDINGS

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 14. Attorney D. James Tree represents Mary D. (Plaintiff); Special Assistant United States Attorney Sarah Elizabeth Moum represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, IN PART,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 1

Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on August 24, 2015, alleging disability since June 30, 2014, due to breast cancer, diabetes, and high blood pressure. Tr. 107. The applications were denied initially and upon reconsideration. Tr. 163-66, 171-89. Administrative Law Judge (ALJ) Keith Allred held a hearing on August 8, 2017, Tr. 47-68, and issued an unfavorable decision on March 27, 2018, Tr. 15-32. Plaintiff requested review from the Appeals Council. Tr. 246-49. The Appeals Council denied Plaintiff's request for review on February 21, 2019. Tr. 1-5. The ALJ's March 2018 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on April 24, 2019. ECF No. 1.

## STATEMENT OF FACTS

Plaintiff was born in 1964 and was 49 years old as of her alleged onset date. She has a high school education and her work history was primarily in casino cashiering and deli work. Tr. 60-61, 365. She has had three rounds of breast cancer, in 1997, 2011, and 2015, resulting in double mastectomies. Tr. 588. Sometime after the second round of breast cancer treatments, she developed mild persistent dizziness. Tr. 455, 469. In 2014, this worsened into more severe spells of vertigo causing her to have difficulty walking. *Id.* She was laid off from her job after having trouble performing her duties. Tr. 470. During chemotherapy for her third bout of breast cancer, she continued to report vertigo as her primary problem. Tr. 590, 592.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035,

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 2

1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

### SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant

can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On March 27, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 18.

At step two, the ALJ determined Plaintiff had the following severe impairments: benign positional vertigo and disequilibrium; essential hypertension; recurrent breast cancer; osteopenia with recent progression to osteoporosis; borderline obesity; and type II diabetes mellitus. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 20-21.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform light exertion level work with the following limitations:

> She can lift and carry 20 lbs. occasionally and 10 lbs. frequently; sit six hours in an eight-hour workday; and stand and walk six hours in an eight-hour workday with normal rest breaks. She can occasionally climb ramps and stairs, balance, stoop/bend, squat, kneel, and crouch. She can never crawl or climb ladders, ropes, or scaffolds. She can have no exposure to hazards such as unprotected heights or moving machinery. She can have occasional exposure to gases, dust, and other pulmonary irritants.

Tr. 21.

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a deli clerk.  Tr. 29.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date, June 30, 2014, through the date of the decision, March 27, 2018.  Tr. 32.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) applying the wrong legal standard for evaluating medical opinions; (2) improperly rejecting medical opinions; and (3) improperly discrediting Plaintiff's symptom testimony.

## DISCUSSION

**1.    Plaintiff's subjective statements**

Plaintiff contends the ALJ erred by improperly rejecting her subjective statements.  ECF No. 13 at 15-21.

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific, cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record "for the reasons explained in this decision." Tr. 29.  The ALJ did not offer any specific explanation for this finding, other than to note Plaintiff was "working full time without apparent difficulty until a supervisor noticed her stumble or swoon," and found it likely she would have been able to continue working had that event not occurred.  *Id.*

"[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination.  To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).  The Ninth Circuit has also held that a "'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion is insufficient for our review." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citing *Vasquez v. Astrue*, 572 F.3d 582, 592 (9th Cir. 2008).

The ALJ's reference to "reasons explained in this decision" is insufficient to meet the specific, clear, and convincing standard required by case law.  The ALJ's only follow up statement after the general assertion was that if Plaintiff's supervisor had not seen her stumble at work, she likely would have been able to

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 6

continue working without apparent difficulty. Tr. 29. The ALJ's finding on this point is not supported by the record. Plaintiff had reported difficulty working prior to that incident. In April 2014 she reported she missed almost the entire previous month of work due to her dizziness. Tr. 516. In May she reported taking time off work because of her balance disturbance and being afraid to walk. Tr. 457, 501. In early June she reported her vertigo bothered her while she was working. Tr. 499. The ALJ's assertion that she had been able to work up through the end of June with no apparent difficulty is not accurate, and the ALJ had no evidence to support the assertion that she likely would have been able to continue working had she not been noticed.

Defendant argues the ALJ sufficiently discredited Plaintiff's allegations regarding her symptoms at the conclusion of his discussion of the medical evidence relating to vertigo/disequilibrium. ECF No. 14 at 4. Defendant argues the ALJ offered several reasons for discounting Plaintiff's claims, including her activities, failure to follow up on treatment possibilities, and lack of support from the medical evidence. *Id.* at 4-7. While it is true that the ALJ mentioned these factors (tr. 25-26), he did not clearly link them to any of Plaintiff's alleged limitations. The rationale came at the conclusion of a three-page recitation of the medical evidence, with a significant portion of the ALJ's discussion focusing on pre-alleged onset date evidence. Tr. 23-26.

Even if it is presumed that this discussion does constitute an analysis of Plaintiff's subjective statements, the Court finds the reasons offered do not reach the clear and convincing level. While a claimant's daily activities may support an adverse credibility finding if the activities contradict her other testimony, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007), the mere fact that a claimant is capable of performing some basic daily activities does not necessarily detract from her overall credibility. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). The ALJ noted Plaintiff

cares for her elderly father.  Tr. 26.  However, the record contains no evidence of what care Plaintiff provided for her father, and indeed reflects Plaintiff's two brothers also lived in the home at times.  Tr. 600.  Furthermore, the Ninth Circuit has acknowledged "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Similarly, the fact that Plaintiff was able to drive on occasion is not inconsistent with her allegations of bouts of vertigo. The single vacation she took, while reportedly involving a good deal of walking,[2] was an isolated event, and does not indicate an ability to be on her feet consistently for 40 hours a week on an ongoing basis.

The ALJ's implication that Plaintiff had not pursued some line of treatment that could have potentially helped her is not a clear and convincing reason to discount her allegations.  Dr. Wright, a consulting ENT, noted blood pressure issues and bradycardia dysrhythmia should be ruled out as sources of Plaintiff's problem.  Tr. 458.  Records from earlier that year indicate Plaintiff having blood pressure checks and restarting her blood pressure medication.  Tr. 455, 521. The record contains no further discussion of specific testing for bradycardia, but Plaintiff's treating doctor's records contain vital signs, including blood pressure and pulse, and the records note hypertension as an active diagnosis.  Tr. 476, 481, 486, 488, 498-99, 501, 506.  Presumably, if these readings were abnormal in some way or further treatment for her hypertension was warranted, her treating doctor would have identified this as an avenue of investigation.  There is nothing in the recommendation to rule out testing for bradycardia that inherently undermines Plaintiff's complaints.

---

[2] The record does not indicate what Plaintiff meant by walking "a lot" on vacation.  Tr. 600.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 8

Finally, Defendant argues the ALJ pointed to normal clinical findings in discounting Plaintiff's allegations, including her stable, non-ataxic gait, intact motor strength, and ability to climb on the exam table independently. ECF No. 14 at 7-8. Because none of the ALJ's other reasons satisfy the clear and convincing standard, a lack of support from the medical records alone is an insufficient basis. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

## 2. Medical opinion evidence

Plaintiff argues the ALJ erred by improperly assessing the medical opinion evidence, specifically by applying the wrong legal standard, giving insufficient reasons for rejecting some opinions, and failing to address one opinion from Plaintiff's treating doctor. ECF No. 13 at 5-15.

When an examining physician's opinion is contradicted by another physician, the ALJ is required to provide "specific and legitimate reasons" to reject the opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

In evaluating the weight owed to various opinions, the ALJ considers a number of factors, including the nature of the treatment relationship, the supportability and consistency of the opinion with other evidence, the specialization of the source, and other factors, such as the source's understanding of disability programs and their familiarity with the claimant's record. 20 C.F.R. §§ 404.1527(c); 416.927(c). Generally, an ALJ will give more weight to the opinion of a source who has examined and treated the claimant. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). If a treating source opinion is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it will be given controlling weight. *Id.*

### a. ALJ's statement of the Law

Plaintiff alleges the ALJ mis-applied the legal standard for evaluating treating source opinions, in that he indicated the statutory factors in 20 C.F.R. § 404.1527(c) were a part of the analysis as to whether a treating source opinion is due controlling weight, as opposed to factors to be considered once it had been determined that an opinion was *not* due controlling weight. ECF No. 13 at 5-9.

The Court finds no error in the ALJ's statement of the law. He discussed the various factors to be assessed in determining the weight due to various opinions and cited the appropriate regulations and rulings. Tr. 27. Any conflation of the order factors are to be considered by the ALJ is harmless; the ALJ's discussion of the evidence and rationale for the weight given to the various opinions is the operative issue to be resolved.

### b. Medical Opinions

Plaintiff argues the ALJ gave insufficient reasons for rejecting the medical source opinions from Dr. Hocson and the state reviewing doctors and failed to discuss Dr. Hocson's 2016 opinion. ECF No. 13 at 9-15. Defendant asserts the ALJ gave sufficient reasons for rejecting the medical opinions and argues any error in failing to discuss the 2016 opinion was harmless, as it largely paralleled the other opinions. ECF No. 14 at 8-13.

Dr. Hocson completed Physical Function Evaluation forms for DSHS in 2014, 2015, and 2016. Tr. 478-80, 686-88, 713-15. In each opinion he noted Plaintiff's primary problem was persistent vertigo, and that she had marked or moderate limitations in performing some work-related functions. Tr. 479, 687, 714. In 2014 and 2016 he concluded she was capable of no more than sedentary work. Tr. 688, 715. In 2015 he noted she was currently undergoing treatment for

breast cancer and had additional moderate limitations in lifting and pulling and was
incapable of even sedentary work. Tr. 479-80.

The ALJ gave the first two opinions limited weight. The ALJ reasoned
Plaintiff's vertigo was not apparent on objective testing and did not seem to impair
her on clinical exams. Tr. 28. He further noted Plaintiff was able to take care of
her elderly father and go on vacation and had been able to work full time "after the
alleged onset date of 2012." *Id.* With respect to the 2015 opinion, he pointed out
the form was completed while Plaintiff was undergoing cancer treatments, and that
more recent notes did not suggest significant ongoing symptoms. *Id.* The ALJ did
not acknowledge or discuss the 2016 opinion. He gave little weight to the DSHS
opinions "for the same reasons as discussed with regard to Dr. Hocson." Tr. 28.

The ALJ did not provide specific and legitimate reasons for rejecting Dr.
Hocson's opinions. As discussed above, the record contains no evidence as to
Plaintiff's caretaking responsibilities for her father. Similarly, the record contains
very little information about Plaintiff's single vacation, and how much walking she
engaged in while on the trip. Tr. 600. As Dr. Hocson was commenting on
Plaintiff's ability to engage in work activities on an ongoing basis, there is no
apparent discrepancy with Plaintiff going on one vacation for ten days.

The ALJ's comment that Plaintiff was "able to work full time after her
reported alleged onset date of 2012" misconstrues Dr. Hocson's opinion. In the
2014 opinion, in response to the form's query as to the "reported onset of primary
impairment," Dr. Hocson wrote "late 2012." Tr. 686. He did not indicate this was
the onset of her debilitating limitations, but rather the onset of her vertigo. *Id.*
This is consistent with Plaintiff's reports that she had been experiencing mild

disequilibrium for several years but experienced a worsening that led to her cessation of work in 2014. Tr. 454, 469.[3]

Finally, the ALJ's interpretation of the medical records as unsupportive of Dr. Hocson's opinions is not supported by substantial evidence. While the ALJ is correct that the record often reflects normal objective neurological exams, there are times when Plaintiff was noted to have an unsteady gait. Tr. 470, 489, 535. The ALJ is not in a position to make evaluations based on his own lay expectations for what the medical records should show. *See e.g., Morales v. Apfel*, 225 F.3d 310, 317-18 (3d. Cir. 2000). In finding there to be insufficient objective indicators, the ALJ effectively implied that Dr. Hocson relied to a large extent on Plaintiff's self-reports. "An ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). The medical opinion evidence must be reevaluated due to the ALJ's improper rejection of Plaintiff's subjective statements.

On remand, the ALJ will reconsider all of the opinion evidence, including the 2016 opinion he did not acknowledge and the DSHS opinions that were rejected for the same reasons as Dr. Hocson's opinions. Tr. 28.

## CONCLUSION

Plaintiff argues the ALJ's decision should be reversed and remanded for the payment of benefits. The Court has the discretion to remand the case for additional

---

[3] While the precise date Plaintiff began experiencing vertigo is not clear from these records, and is indicated elsewhere to have been as early as 2009 (tr. 478, 713), Plaintiff has only alleged disability on this application since June 30, 2014, when she stopped working.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 12

evidence and findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

The ALJ's RFC determination is not supported by substantial evidence in this case and must be reevaluated. On remand, the ALJ shall reevaluate the medical evidence and Plaintiff's subjective complaints, formulate a new RFC, obtain supplemental testimony from a vocational expert, if necessary, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1.     Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED, IN PART**.

2.     Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3.     The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.     An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED April 30, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 13